ARNOLDO CASILLAS, ESQ., SBN 158519
CASILLAS & ASSOCIATES
3777 Long Beach Blvd., Third Floor
Long Beach, CA 90807
Tel:  (562) 203-3030
Fax: (323) 297-2833
Email: acasillas@casillaslegal.com

MARK P. BRANDT, ESQ, SBN 112529
Law Office of Mark P. Brandt
23901 Calabasas Road, Suite 1063
Calabasas, CA 90302
Tel: (818) 222-2257
Fax: (818) 223-8937
Email: Mpbrandt@me.com

Attorneys for Plaintiff Gaspar Zavala

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GASPAR ZAVALA,<br><br>                    Plaintiff,<br><br> vs.<br><br>RONALD BROWN, KELLY EMLING, MARK RIDLEY-THOMAS, LAW OFFICES OF THE LOS ANGELES COUNTY PUBLIC DEFENDER; COUNTY OF LOS ANGELES, AND DOE DEFENDANTS 1 THROUGH 10, INCLUSIVE,<br><br>                    Defendants.<br>_____ | **CASE NO.**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**CIVIL RIGHTS VIOLATIONS PURSUANT TO 42 U.S.C. § 1983**<br><br>**1.  DELIBERATE INDIFFERENCE TO CONSTITUIONAL VIOLATIONS**<br><br>**2. MUNICIPAL LIABILITY FOR CONSTITUIONAL VIOLATIONS**<br><br>**DEMAND FOR JURY TRIAL** |

1

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## COMPLAINT FOR DAMAGES

COMES NOW plaintiff GASPAR ZAVALA, and alleges as follows:

### I.

### INTRODUCTION

1.      Plaintiff GASPAR ZAVALA (hereafter also "Mr. Zavala") was jailed for more than 13 years awaiting trial.   After his public defender was replaced, the Los Angeles County Superior Court dismissed the civil detention action against him finding that the 13-year pre-trial detention was so presumptively prejudicial and oppressive that Mr. Zavala's due process rights were violated.  At most, Mr. Zavala's commitment would have been limited to two years had he been brought to trial in a timely fashion.

2.      The constitutional violations suffered by Mr. Zavala resulted from the deliberate indifference to his circumstances by Ronald Brown, Kelly Emling, and Mark Ridley-Thomas who were aware of his plight and acquiesced in the violation of Mr. Zavala's civil rights.

3.      The purpose of the present action is to bring to light the complete failure of the Public Defender's office and the individually named defendants to carry out their statutory and ethical duties to their clients and to bring attention to the injustice carried out by the present defendants with respect to a large group of men who have been waiting in jail for decades.   The purpose of the of this action is also to make examples of Ronald Brown, Kelly Emling and Mark Ridley-Thomas to ensure that other similarly-situated public officials honor their promise to protect and defend the constitution of the United States.

////

////

////

////

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## II.

## JURISDICTION AND VENUE

4.     This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, the Fourteenth Amendment of the United States Constitution.  Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

5.     Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in the City of Los Angeles, California.

## III.

## PARTIES

6.     At all times relevant hereto, Plaintiff Gaspar Zavala (hereafter also "Plaintiff") is and was a resident of the County of Los Angeles, California.

7.     At all times relevant hereto defendant Ronald Brown was a resident of the County of Los Angeles.  Ronald Brown was appointed public defender of the County of Los Angeles in 2011 and served as the public defender for Los Angeles County until 2016.  Prior to that, he served as Assistant Public Defender from 2006 to 2011. As the Public Defender, he was vested by law with the responsibility of representing indigent defendants in Los Angeles County at all stages of the criminal proceedings and in all stages of civil detention proceedings related to indigent persons detained pursuant to California *Welfare and Institutions Code*, section 6600, et seq.

8.     As early as 2006, when defendant Ronald Brown began serving as Assistant Public Defender, he was informed of the present plaintiff's pending SVP proceedings and he monitored Mr. Zavala's case until defendant Brown retired in 2016.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

9.    With respect to all conduct alleged herein, defendant Brown acted under the color of law and in the course and scope of his employment with the County of Los Angeles.

10.    As the Public Defender for Los Angeles County and as Assistant Public Defender, defendant Ronald Brown was a policy maker with the authority to:

a.    develop, adopt, ratify, implement, modify, abolish, revoke and rescind all customs, practices, procedures and policies of the Law Offices of the Los Angeles County Public Defender;

b.    develop and implement specific training programs for public defender personnel, including deputy public defenders,

c.    propose budget allocations for the funding for specific units within his office;

d.    replace or reassign personnel from or to specific cases;

e.    order personnel to take specific actions in particular cases;

f.    declare that the public defender's office is "unavailable" and thereby have a case assigned to another public defender agency or to a private panel attorney;

g.    declare conflicts of interest; and,

h.    order or otherwise undertake all necessary measures to ensure that any case handled by the public defender's office would be brought to trial in a timely manner.

11.    Defendant Ronald Brown monitored the civil detention proceedings of Gaspar Zavala between 2006 until defendant Ronald Brown approved the declaration of a conflict in Mr. Zavala's case in 2015.  Defendant Brown had specific knowledge Mr. Zavala's civil detention proceedings and, as spelled out herein below, was deliberately indifferent to his prolonged detention and the resulting violation of Mr. Zavala's civil rights.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

12.     Defendant Brown also met monthly, and often times more regularly, with defendant Mark Ridley-Thomas to discuss the operation and management of The Law Offices of the Los Angeles County Public Defender.  These meetings included discussions of the SVP Unit, its case load, individual cases handled by said unit -  including Mr. Zavala's case, the backlog of work in the unit, the understaffing of that unit, and the extended time periods that SVP Unit clients were being detained as the awaited trial.  Defendant Ronald Brown regularly provided defendant Mark Ridley-Thomas with memoranda, emails, reports, minutes of expanded meetings, budget requests, and other written correspondence and documents regarding the management and operation of the SVP Unit.

13.     Defendant Brown is sued in his personal capacity and in his official capacity as a supervisory official for his own culpable action or inaction in the training, supervision and/or control of his subordinates.  He is also sued in his official capacity for his acquiescence in the constitutional deprivations which this complaint alleges and for the conduct that showed a reckless or callous indifference to the rights of others, including the present defendant.  This defendant's affirmative conduct, as described herein below, involves his acquiescence to, and ratification of, specific customs, practices and policies and procedures carried out by his subordinates which this defendant knew, or should have known, would inflict a constitutional violation upon the present plaintiff and other similarly situated persons in this defendant's charge.

14.     At all times relevant hereto defendant Kelly Emling was a resident of the County of Los Angeles, and, as relevant here, served as chief deputy public defender with The Law Offices of the Los Angeles County Public Defender.  She had the responsibility of representing indigent defendants in all stages of civil detention proceedings related to persons detained pursuant to California *Welfare and Institutions Code*, section 6600, et seq.  With respect to all conduct alleged herein,

defendant Emling acted under the color of law and in the course and scope of her employment with the County of Los Angeles.  As a chief deputy public defender, defendant Emling was also a policy maker with the authority to:

    a.    develop, adopt, ratify, implement, modify, abolish, revoke and rescind all customs, practices, procedures and policies of the Law Offices of the Los Angeles County Public Defender;

    b.    develop and implement specific training programs for public defender personnel, including deputy public defenders,

    c.    propose budget allocations for the funding for specific units within his office;

    d.    replace or reassign personnel from or to specific cases;

    e.    order personnel to take specific actions in particular cases;

    f.    declare that the public defender's office is "unavailable" and thereby have a case assigned to another public defender agency or to a private panel attorney;

    g.    declare conflicts of interest; and,

    h.    order or otherwise undertake all necessary measures to ensure that any case handled by the public defender's office would be brought to trial in a timely manner.

    15.    Defendant Kelly Emling monitored the civil detention proceedings of Gaspar Zavala.  As a result, defendant Kelly Emling had specific knowledge regarding the civil detention proceedings for plaintiff Gaspar Zavala and, as spelled out herein below, was deliberately indifferent to the violation of Mr. Zavala's civil rights.  Defendant Kelly Emling also met monthly, and often times more regularly, with defendant Mark Ridley-Thomas to discuss the operation and management of The Law Offices of the Los Angeles County Public Defender.  These meetings included discussions of SVP Unit, its case load, individual cases handled by said unit

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

- including Mr. Zavala's case, the backlog of work in the unit, the understaffing of that unit, and the extended time periods that SVP Unit clients were being detained. Defendant Kelly Emling regularly provided defendant Mark Ridley-Thomas with memoranda, emails, reports, budget requests, and other written correspondence and documents regarding the management and operation of the SVP Unit.

16.    Defendant Emling is sued in her personal capacity and in her official capacity as a supervisory official for her own culpable action or inaction in the training, supervision and/or control of his subordinates.  She is also sued in her official capacity for his acquiescence in the constitutional deprivations which this Complaint alleges and for the conduct carried out by her that showed a reckless or callous indifference to the rights of others.  This defendant's affirmative conduct, as described herein below, involves her acquiescence to, and ratification of, specific customs, practices and policies and procedures carried out by her subordinates which this defendant knew, or should have known, would inflict a constitutional violation upon the present plaintiff and other similarly situated persons in this defendant's charge.

17.    At all times relevant hereto defendant Mark Ridley-Thomas was a resident of the County of Los Angeles.  He is and has been a member of the Board of Supervisors of Los Angeles County since 2008.  As part of his duties as a member of the Los Angeles County Board of Supervisors, he was assigned with the responsibility of directly overseeing, managing, directing and/or controlling defendant LAW OFFICES OF THE LOS ANGELES COUNTY PUBLIC DEFENDER (hereafter also "The Public Defender's Office").  With respect to all conduct alleged herein, defendant Ridley-Thomas acted under the color of law and in the course and scope of his authority as a member of the Board of Supervisors of the County of Los Angeles.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

18.    Defendant Mark Ridley-Thomas was a policy maker for defendant COUNTY OF LOS ANGELES and for defendant LAW OFFICES OF THE LOS ANGELES COUNTY PUBLIC DEFENDER and he had the authority to:

a.    develop, adopt, ratify, implement, modify, abolish, revoke and rescind all customs, practices, procedures and policies of the Law Offices of the Los Angeles County Public Defender;

b.    instruct Ronald Brown and Kelly Emling to declare that the public defender's office is "unavailable" and thereby have a case assigned to another public defender agency or to a private panel attorney;

c.    develop and implement specific training programs for all personnel in the Law Offices of the Los Angeles County Public Defender, including deputy public defenders,

d.    propose budget allocations for the funding for specific units within the Law Offices of the Los Angeles County Public Defender;

e.    instruct Ronald Brown and Kelly Emling to replace or reassign personnel within the Law Offices of the Los Angeles County Public Defender; and,

f.    instruct Ronald Brown and Kelly Emling to order personnel, including defendant Ronald Brown and defendant Kelly Emily to take specific actions in particular cases.

19.    Defendant Mark Ridley-Thomas oversaw, monitored and/or managed defendant The Law Offices of the Los Angeles County Public Defender.  In carrying out his oversight of said office, he met monthly, and often times more regularly, with defendant Ronald Brown and defendant Kelly Emling to discuss the operation and management of The Law Offices of the Los Angeles County Public Defender.  These meetings included discussions of the SVP Unit, it's case load, individual cases handled by said unit -  including Mr. Zavala's case, the backlog of work in the unit,

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

the understaffing of that unit, and the extended time periods that SVP Unit clients were being detained.  Defendant Mark Ridley-Thomas requested and received regular memoranda, emails, reports, budget requests, and other written correspondence and documents from defendants Brown, Emling, and other members of the Public Defender's Office regarding the management and operation of the SVP Unit, including the status of the civil detention proceedings of Gaspar Zavala. Defendant Ridley-Thomas had specific knowledge regarding the civil detention proceedings for plaintiff Gaspar Zavala and, as spelled out herein below, was deliberately indifferent to the violation of Mr. Zavala's civil rights.

20.     Defendant Mark Ridley-Thomas is sued in his personal capacity and in his official capacity as a supervisory official for his own culpable action or inaction in the training, supervision and/or control of his subordinates.  He is also sued in his official capacity for his acquiescence in the constitutional deprivations which this Complaint alleges and for the conduct that showed a reckless or callous indifference to the rights of others.  This defendant's affirmative conduct, as described herein below, involves his acquiescence to, and ratification of, specific customs, practices and policies and procedures carried out by his subordinates which this defendant knew, or should have known, would inflict a constitutional violation upon the present plaintiff and other similarly situated persons in this defendant's charge.

21.     At all times mentioned herein, defendant County of Los Angeles was a public entity duly organized and existing under and by virtue of the laws of the state of California, with the capacity to sue and be sued.  Defendant County of Los Angeles is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents, departments, subdivisions and agencies.  Defendant County of Los Angeles operates, manages, directs and/or controls defendant Law offices of the Los Angeles County Public Defender which is also a separate public entity. At all times relevant to the facts alleged herein, Defendant County of Los

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  Angeles was responsible for assuring that the actions, omissions, policies, procedures,

2  practices and customs of its departments, subdivisions, and employees, complied with

3  Constitution of the United States.

4       22.    At all times mentioned herein, defendant Law offices of the Los Angeles

5  County Public Defender was a public entity, and subdivision of the County of Los

6  Angeles, duly organized and existing under and by virtue of the laws of the state of

7  California, with the capacity to sue and be sued.  Defendant Law Offices of the Los

8  Angeles County Public Defender is responsible for the actions, omissions, policies,

9  procedures, practices and customs of its various agents, departments, subdivisions

10  and Units, including its SVP Unit.

11       23.    According to defendant Law Offices of the Los Angeles County Public

12  Defender, its SVP Unit was established to defend those persons who were being

13  committed to state mental institutions for potentially an indefinite term of

14  commitment, and that its SVP Unit consists of experienced attorneys and paralegals

15  practicing exclusively in this highly specialized area of law.

16       24.    DOE defendants 1 through 10, inclusive and each of them, are and were

17  at all times relevant here, supervisors, elected officials, agents, employees and/or

18  representatives of defendant County of Los Angeles acting within their capacity as

19  employees, agents and servants of the defendant County of Los Angeles and/or Law

20  Offices of the Los Angeles County Public Defender.  Said defendants were policy-

21  makers with the authority to develop, modify, amend, ratify, implement, revoke, and

22  rescind all policies, practices, procedures and customs of the Law Offices of the Los

23  Angeles County Public Defender.  Said defendants at all times alleged herein where

24  acting within said course and scope of that employment and agency, and at all times

25  relevant hereto were acting under the color of law.  Said Defendants are sued

26  individually and in their official capacity as supervisors, employees, agents and/or

27  representatives of defendant County of Los Angeles.

28

10

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

25.     The present plaintiff is ignorant of the true names and capacities of defendants sued herein as DOE defendants 1 through 10, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believe and thereon allege that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the acts and/or omissions of said fictitiously named defendants.

**IV.**

**STATEMENT OF RELEVANT FACTS**

**A.**

**The Los Angeles County Superior Court has determined that Mr. Zavala's Due Process rights were violated by the 13-year pre-trial detention.**

26.     On August 3, 2016, the Honorable Maria Stratton, Judge of the Los Angeles County Superior Court, issued an order finding that the 13-year pre-trial detention of Gaspar Zavala violated his due process rights under the Fourteenth Amendment of the US Constitution, and she dismissed the petition for civil detention which was filed on November 1, 2002.

27.     Judge Stratton's order first notes that an 11-month delay in getting to trial on an SVP petition may alone violate a detainee's due process rights, citing *People v. Litmon (Litmon II)*, (2008) 162 Cal. App. 4th 1, 27.

28.     To determine if there has been a violation of plaintiff's due process rights and speedy trial rights, Judge Stratton applied the tests established by the United States Supreme Court in *Mathews v. Eldridge*, (1976) 424 U.S. 319 and *Baker v. Wingo*, (1972) 407 U.S. 514, and the court concluded as follows:

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

a.  Mr. Zavala's 13 years of pre-trial confinement constituted a massive curtailment of liberty requiring due process protection;

b.  The risk of his erroneous deprivation of liberty was great given that the hired evaluators had split opinions as to whether Mr. Zavala even qualified for civil confinement under the SVP statute;

c.  Had his case been brought to trial in a timely fashion and had he been committed, he would have been committed for only a two-year period;

d.  There existed no fiscal or administrative burdens on the government that could have possibly justified the lengthy pre-trial detention suffered by Mr. Zavala;

e.  The 13-year delay was presumptively prejudicial and oppressive to a maximum degree;

f.  Often, no reasons were given for the numerous stipulated delays;

g.  If defense counsel's need to prepare for trial caused a 13-year delay, Mr. Zavala's speedy trial rights superseded defense counsel's interest in interminable trial preparation; and,

h.  That the record is replete with Mr. Zavala's assertion of his right to a speedy trial, including his taking the extra step of filing a writ of habeas corpus in *propia persona* in year three when he could not get his public defender to advocate for him in this regard, as well as his continued objection to continuances.

29.  The court concluded that the lengthy detention was not of Mr. Zavala's own making, that he made it clear that he wanted a trial while his public defender waived his appearance and stipulated to continuances for years at a time, and that he was faced with a Hobson's choice of acquiescing to his attorney's strategies, whatever they were, or go to trial with an attorney that was not timely prepared.  As

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

such, the court rejected the argument that Mr. Zavala was responsible for the long delay.

30.     Ultimately, the court concluded that the long 13-year pre-trial detention of Mr. Zavala was presumptively prejudicial and that such detention violated his due process rights.

31.     Mr. Zavala was released from the Coalinga State Hospital, without ever having been tried, on August 12, 2016 after having been detained for 5,029 days, or 13 years, nine months and 10 days.

**B.**

**Plaintiff's 13-year ordeal as an SVP pre-trial detainee.**

32.     Mr. Zavala served a 7-year sentence in state prison.  Near the end of his sentence, and before he was released from prison, the Los Angeles County District Attorney's office filed a petition for civil commitment pursuant to California *Welfare & Institutions Code*, section 6600 et seq.  On November 5, 2002, the Superior Court issued an order for Mr. Zavala's removal from prison so he could be arraigned on the petition.

33.     On November 26, 2002, Mr. Zavala appeared and entered a denial to the petition. The court, the Honorable Kevin Ross presiding, appointed counsel on his behalf and set the next appearance as a probable cause hearing setting for February 25, 2003. Mr. Zavala waived time to February 25, 2003, plus 30 days. Mr. Zavala was ordered housed at the Los Angeles County Jail.

34.     Throughout Mr. Zavala's over-13-year detention, he was represented by attorneys from the Public Defender's Office.

35.     On February 25, 2003, a different bench officer, Judge Barela, presided at the hearing.  Mr. Zavala was present in court. The minute order reflects that Mr. Zavala was housed at Atascadero State Hospital, although as of February 13, 2003, he

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1   was examined by a physician at the Los Angeles County Jail for various ailments.

2   The court continued the probable cause hearing setting to April 8, 2003.

3       36.     On March 4, 2003, the court ordered the Los Angeles County Jail to

4   provide a wheelchair for Mr. Zavala, who is an above-the-knee amputee.

5       37.     On April 8, 2003, Mr. Zavala was present in court. The court continued

6   the probable cause hearing setting to May 29, 2003.

7       38.     On May 29, 2003, Mr. Zavala was not present in court; counsel waived

8   his appearance.  The minute order reflects that Judge Barela was not present; he had

9   authorized his judicial assistant to continue the probable cause hearing setting to June

10   26, 2003. "Both sides" agreed to the continuance.

11       39.     On June 26, 2003, Mr. Zavala was present in court. The court continued

12   the probable cause hearing setting to August 13, 2003.

13       40.     On August 13, 2003, Mr. Zavala was not in court; his counsel waived his

14   appearance. "Both parties" stipulated to continue the probable cause hearing setting to

15   September 30, 2003.

16       41.     On September 30, 2003, Mr. Zavala's counsel moved to continue the

17   probable cause hearing setting and the court continued it to October 9, 2003. The

18   October 9 date was set as a non-appearance for Mr. Zavala.

19       42.     On October 9, 2003, Mr. Zavala was not present; counsel waived his

20   appearance. His counsel moved to continue the probable cause hearing setting date.

21   The motion was granted and the court continued the probable cause hearing setting to

22   December 3, 2003.  The court stated a tentative probable cause hearing date of

23   February 4, 2004. December 3 was set as a non-appearance for Mr. Zavala.

24       43.     On December 3, 2003, Mr. Zavala was not present. The court set the

25   probable cause hearing for February 4, 2004 and Mr. Zavala was ordered out for the

26   probable cause hearing.

27

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

44.     On December 3, 2003, the court also appointed Vianne Castellano, Ph.D., and Raymond Anderson, Ph.D., as Mr. Zavala's expert witnesses.

45.     On February 4, 2004, the District Attorney's Office requested that the court issue an order directing the California Department of Corrections to provide the entirety of Mr. Zavala's prison records, specifically excluding documents in his confidential file. The court granted the request.

46.     On February 4, 2004, a different bench officer, Judge Rico, presided at the hearing. With Mr. Zavala present in court, the court commenced the probable cause hearing with the testimony of Dr. Dawn Starr and Dr. Robert Owen. The hearing was continued to February 11, 2004, to conclude.

47.     On February 11, 2004, Mr. Zavala filed a motion to exclude the testimony of DMH evaluator Robert Owen. Mr. Zavala argued that Dr. Owen had re-evaluated Mr. Zavala in violation of the terms and conditions for such re-evaluations set out by the court to protect the Fifth and Sixth Amendment rights of respondents in Mr. Zavala's circumstances. At the probable cause hearing on February 4, the District Attorney's Office had used statements made by Mr. Zavala at the re-evaluation interview. Mr. Zavala asked that Dr. Owen's testimony and report be stricken.

48.     On February 11, 2004, the court denied Mr. Zavala's motion to exclude Dr. Owen's testimony and found probable cause in support of the petition. The court set a pre-trial conference for April 21, 2004. It was set as a non-appearance for Mr. Zavala. The file does not indicate if Mr. Zavala was present in court on February 11, 2004.

49.     On April 21, 2004, counsel waived Mr. Zavala's presence. The minute order reflects he is a "miss-out"; i.e., the sheriff failed to transport Mr. Zavala to court.  The pre-trial conference was continued to May 18, 2004. Mr. Zavala was ordered to be transported to court.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

50.   On May 18, 2004, Mr. Zavala's counsel waived his presence. The minute order reflects he was "miss-out." The judge was "unavailable" and the pre-trial conference was continued to May 27, 2004. Mr. Zavala was ordered to be transported to court.

51.   On May 27, 2004, Mr. Zavala was present. The matter was continued to June 30, 2004.

52.   Mr. Zavala was ordered to be transported to court.  On June 30, 2004, Mr. Zavala was again listed as a "miss-out." Counsel waived his presence.  The matter was continued to July 28, 2004.

53.   On August 25, 2004, Mr. Zavala was present in court. The court set a pre-trial conference for September 15, 2004. Mr. Zavala was ordered to be transported to court.

54.   On September 15, 2004, Mr. Zavala was present in court. Mr. Zavala's attorney requested a continuance which the court granted. The pre-trial conference was continued to October 7, 2004.

55.   On October 7, 2004, a different bench officer, Judge Ross, presided at the hearing.

56.   Mr. Zavala was present in court. Mr. Zavala's attorney requested a continuance which the court granted. The pre-trial conference was continued to December 9, 2004.

57.   On December 9, 2004, Judge Rico presided at the hearing. Mr. Zavala was present in court.

58.   Mr. Zavala's attorney requested a continuance which the court granted. The pre-trial conference was continued to February 16, 2005. Mr. Zavala was ordered to be transported to court.

16

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

59.     On January 27, 2005, Mr. Zavala, in *propia persona*, filed a hand-written petition for writ of *habeas corpus*, alleging that he was denied due process of law because respondent court refused to set the matter to trial. Mr. Zavala stated:

> As of this writing, it has been nearly one full year since respondent court found there was "probable cause" to believe that petitioner could be a sexually violent predator, and respondent court was then required to "order that a trial be conducted" on the matter. However, the respondent court has failed and refused to order a trial.
>
> Petitioner's counsel refused to announce ready for trial because of his congested calendar. However, a deputy public defender's congested calendar is not good cause for repeated continuances if petitioner objects. Petitioner's confinement must bear some reasonable relation to the purpose for which he is confined. Therefore, petitioner makes the legal demand that he be taken to trial at the earlier possible time, and, if not, that the underlying petition for civil commitment, be dismissed with prejudice.

60.     On February 16, 2005, a different bench officer, Judge Gomez, presided at the hearing. Mr. Zavala was present in court. Mr. Zavala's attorney requested a continuance which the court granted. The pre-trial conference was continued to March 9, 2005. It was set as a non-appearance for Mr. Zavala.

61.     On March 9, 2005, Judge Ross presided at the hearing. Mr. Zavala was not present in court; counsel waived his presence. The pre-trial conference was continued to May 10, 2005.  The court also set a trial setting conference as an appearance for Mr. Zavala on June 3, 2005.  Mr. Zavala was ordered to be transported to court.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

62.     On April 15, 2005, by written order, the court, by Judge Rico, denied the petition "insofar as it seeks a dismissal of the matter. The matter will proceed to trial as expeditiously as possible." The court found:

> Petitioner has requested and been granted numerous extensions of time while this matter has been pending. Most recently, the trial has been delayed only because petitioner's attorney is currently engaged in a trial in another matter; Counsel has assured the court and petitioner that petitioner's case would be counsel's next trial. This being the case, the basis for petitioner's writ is moot. Petitioner's matter will proceed to trial as soon as counsel is ready to proceed.

63.     On May 10, 2005, a different bench officer, Judge Ross, presided at the hearing. Mr. Zavala was presented in court. Mr. Zavala's attorney requested a continuance of the pre-trial conference to June 16, 2005, and that Mr. Zavala be present. The June 3, 2005, date was vacated. Mr. Zavala was ordered to be transported to court.

64.     On June 16, 2005, a different bench officer, Judge Rico, presided at the hearing. Mr. Zavala was not in court. Mr. Zavala's counsel requested a continuance of the pre-trial conference and the request was granted. The court continued the pre-trial conference to July 14, 2005, and set trial to commence on August 1 I, 2005. Mr. Zavala was ordered to be transported to court.

65.     On July 14, 2005, Mr. Zavala was in court. At the request of Mr. Zavala's counsel, the court continued the pretrial conference to August 30, 2005. The court set trial to commence on September 20, 2005.

66.     On August 30, 2005, Mr. Zavala was not present in court; counsel waived his presence. On Mr. Zavala's counsel's motion, the court continued the matter to September 20, 2005, for a pre-trial conference, not trial. Mr. Zavala was ordered to be transported to court. Although the minute order states that Mr. Zavala's

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  counsel requested a continuance, the court's handwritten notes suggest that the
2  District Attorney's Office needed more time to rebut Mr. Zavala's expert's opinion.

3       67.    On September 20, 2005, Mr. Zavala was in court. At the request of Mr.
4  Zavala's attorney, the pre-trial conference was continued to October 5, 2005 as an
5  expert's report was pending.

6       68.    On September 28, 2005, the October 5, 2005, date was advanced and
7  vacated. Mr. Zavala was in court. The matter was continued to November 2, 2005, for
8  a pre-trial conference.

9       69.    On November 2, 2005, both counsel submitted a "form to request new
10  date and vacate date case is originally set for." They agreed on November 17, 2005,
11  as the next date. The reason given was: "in trial."

12       70.    On November 17, 2005, a different bench officer, Judge Gomez,
13  presided at the hearing. Mr. Zavala was listed as a "miss-out." The matter was
14  continued on Mr. Zavala's counsel's motion for a pre-trial conference on December
15  14, 2005. Mr. Zavala was ordered to be transported to court.

16       71.    December 14, 2005, Mr. Zavala was not in court. The court continued
17  the pre-trial conference to December 15, 2005, and Mr. Zavala was ordered to be
18  transported to court.

19       72.    On December 15, 2005, Mr. Zavala was not in court. On motion by Mr.
20  Zavala's counsel, the court continued the pre-trial conference to January 19, 2006.
21  Mr. Zavala was ordered to be transported to court.

22       73.    On January 19, 2006, a different bench officer, Judge Cho, presided at
23  the hearing. Mr. Zavala was present in court. At the request of Mr. Zavala's attorney,
24  the court continued the pre-trial conference to February 16, 2006. Mr. Zavala was
25  ordered to be transported to court.

26
27
28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

74. On February 16, 2006, Mr. Zavala was present in court. Upon stipulation of counsel the court continued the pre-trial conference to March 14, 2006. Mr. Zavala was ordered to be transported to court.

75. On March 14, 2006, Mr. Zavala was present in court. Upon stipulation of counsel, the court continued the pre-trial conference to April 12, 2006. Mr. Zavala was ordered to be transported to court.

76. On April 12, 2006, Mr. Zavala was listed as a "miss-out" and counsel waived his presence. Upon stipulation of counsel, the court continued the pre-trial conference to May 31, 2006. Mr. Zavala was ordered to be transported to court.

77. One year has now passed since the court denied as moot Mr. Zavala's petition for *habeas corpus* with the public defender's promise to move the case to trial as expeditiously as possible.

78. On May 31, 2006, a different bench officer, Judge Haynes, presided at the hearing. Mr. Zavala is listed as a "miss-out." Upon stipulation of counsel, the court continued the pre-trial conference to July 12, 2006. Mr. Zavala was ordered to be transported to court. The court issued an order compelling interviews for the purpose of updating the evaluations pursuant to *Welf. & Inst. Code*, § 6603(c).

79. On July 12, 2006, Mr. Zavala is listed as a "miss-out." The court continued the pre-trial conference to September 19, 2006. Mr. Zavala is ordered to be transported to court.

80. On September 19, 2006, Mr. Zavala is present in court. Upon stipulation of counsel, the court continued the pre-trial conference to September 28, 2006. Mr. Zavala is ordered to be transported to court.

81. On September 28, 2006, Mr. Zavala is present in court. Upon stipulation of counsel, the court continued the pre-trial conference to November 9, 2006. Mr. Zavala is ordered to be transported to court.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

82.     On October 31, 2006, in response to the implementation of proposition 83, which changed the term of commitment from two years to life, a stipulation was filed that the District Attorney agreed to apply the two-year commitment period to pending initial petitions for 24 months after the effective date of the new law. For cases in which the initial order of commitment is issued 24 months or more after the effective date, the District Attorney would seek an indeterminate commitment.

83.     On November 9, 2006, Mr. Zavala was not in court. Upon stipulation of counsel, the court continued the pre-trial conference to February 21, 2007. Mr. Zavala was ordered to be transported to court.

84.     Up until this appearance, Mr. Zavala had been housed at the Los Angeles County Jail, walking distance from the courtroom where all the proceedings had been held. On this November 9, 2006, date, on the motion of the District Attorney's Office, the court ordered Mr. Zavala transferred to Coalinga State Hospital. "The court finds that there are services and treatment available at Coalinga State Hospital, that is not available at the Los Angeles County Jail."

85.     On February 21, 2007, Mr. Zavala was not present in court; he was now housed at Coalinga State Hospital; counsel waived his presence. Upon stipulation of counsel, the court continued the pre-trial conference to April 3, 2007, which was set as a non-appearance for Mr. Zavala.

86.     On April 3, 2007, Mr. Zavala was not present in court; counsel waived his presence. Upon stipulation of counsel, the court continued the pre-trial conference to May 17, 2007. The court's hand-written notes indicate that petitioner was now represented by new counsel from the Public Defender's Office.

87.     Two years had now passed since the court denied as moot Mr. Zavala's petition for habeas corpus with the representation from the Public Defender's Office to move the case to trial as expeditiously as possible.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

88.     On May 17, 2007, Mr. Zavala was not present in court; counsel waived his presence. Upon stipulation of counsel, the court continued the pre-trial conference to June 21, 2007, which was set as a non-appearance for Mr. Zavala.

89.     On June 21, 2007, Mr. Zavala was not present in court; counsel waived his presence. Upon stipulation of counsel, the court continued the pre-trial conference to August 8, 2007, which was set as a non-appearance for Mr. Zavala.

90.     On August 8, 2007, a different bench officer, Judge Landin, presided at the hearing. Mr. Zavala was not present in court; counsel deputy public defender Michael Suzuki, who had represented Mr. Zavala since the 2002 filing of the petition, advised that the case was to be re-assigned to a new public defender. Both parties agreed to continue the pre-trial conference. The court set the pre-trial conference for October 3, 2007, which was set as a non-appearance for Mr. Zavala.

91.     On October 3, 2007, Mr. Zavala was not present in court; new counsel, Deputy Public Defender Joe Magallanes waived his presence. Upon stipulation of counsel, the court continued the pre-trial conference to January 15, 2008, which was set as a non-appearance for Mr. Zavala.

92.     On January 15, 2008, Mr. Zavala was not present in court; counsel waived his presence. Upon stipulation of counsel, the court continued the pre-trial conference to April 22, 2008, which was set as a non-appearance for Mr. Zavala.

93.     On April 22, 2008, Mr. Zavala was not present in court; counsel waived his presence. Upon stipulation of counsel, the court continued the pre-trial conference to August 12, 2008, which was set as a non-appearance for Mr. Zavala. Counsel stipulated to a presumptive trial date of February 3, 2009. The court's hand-written note states "need to set a presumptive trial date" and notes "2/3/009 trial date."

94.     Three years had now passed since the court denied as moot Mr. Zavala's petition for habeas corpus with the promise to move the case to trial as expeditiously as possible.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

95.     On August 12, 2008, Mr. Zavala was not present in court; counsel waived his presence. Upon stipulation of counsel, the court continued the pre-trial conference to November 18, 2008, which was set as a non-appearance for Mr. Zavala. Counsel stipulated to a presumptive trial date of March 10, 2009 at the Pasadena Superior Court.

96.     On November 18, 2008, a different bench officer, Judge Klein, presided at the hearing. Mr. Zavala's presence was waived. Upon stipulation of counsel, the court continued the pre-trial conference to January 28, 2009, which is set as a non-appearance for Mr. Zavala. This is the first appearance in the mental health courthouse in Los Angeles.

97.     On January 28, 2009, a different bench officer, Judge pro-tem Drath, presided at the hearing. Mr. Zavala's presence was waived. Upon stipulation of counsel, the court continued the pre-trial conference to February 5, 2009, which is set as a non-appearance for Mr. Zavala.

98.     On February 5, 2009, a different bench officer, Judge Stratton, presided at the hearing. Mr. Zavala's presence was waived. Upon stipulation of counsel, the court continued the pre-trial conference to May 12, 2009. The court informed counsel that a trial date will be set on May 12, 2009. The court issued an order for updated evaluations.

99.     On May 12, 2009, Mr. Zavala's presence was waived. Upon stipulation of counsel, the court continued the pre-trial conference to August 19, 2009. According to the court's handwritten notes, the court was advised that the latest updated evaluations would become stale in early 2010. The court informed counsel that trial must commence before the evaluations go stale.

100.   Four years had now passed since the court denied as moot Mr. Zavala's petition for habeas corpus with the promise to move the case to trial as expeditiously as possible.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

101.   On August 19, 2009, a different bench officer, Judge Widdifield, presided at the hearing. Mr. Zavala's presence was waived. Upon stipulation of counsel, the court continued the pre-trial conference to November 19, 2009, which was set as a nonappearance for Mr. Zavala.

102.   On November 19, 2009, the court continued the pre-trial conference to January 6, 2010.

103.   On January 6, 2010, Mr. Zavala's presence was waived. Upon stipulation of counsel, the court continued the pre-trial conference to February 9, 2010, which was set as a non-appearance for Mr. Zavala. The court set a briefing deadline of February 2, 2010, for a motion, opposition and reply. According to the court's handwritten notes, a motion was contemplated and updated evaluations were necessary for trial.

104.   On February 3, 2010, the court ordered Mr. Zavala to submit to interviews for the purpose of preparing updated evaluations.

105.   On February 9, 2010, in order to receive the updated evaluations, the court continued the pre-trial conference to March 23, 2010, which was set as a non-appearance for Mr. Zavala.

106.   On March 23, 2010, Mr. Zavala's presence was waived. Upon stipulation of counsel, the pre-trial conference was continued to April 16, 2010, which was set as a non-appearance for Mr. Zavala. According to the court's handwritten notes, Mr. Zavala intended to file a motion pursuant to *People v. Ronge*.

107.   On March 23, 2010, Mr. Zavala, through counsel, filed a "wavier of court appearance" in which he authorized his counsel to appear for him.

108.   On April 6, 2010, Mr. Zavala, through counsel, filed a motion to dismiss petition based on use of an invalid protocol in preparing Mr. Zavala's evaluations.

109.   On April 16, 2010, Mr. Zavala's presence was waived. The court denied Mr. Zavala's motion to dismiss; the court granted counsel's oral motion pursuant to

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

*Ronge* for new evaluations by the two original evaluators on the ground that the evaluations prepared in 2002, 2003, 2005, and 1008 had used an "underground," improper protocol. The court issued its written ruling that same day. As a result of its ruling on Mr. Zavala's oral *Ronge* motion, the court dropped the pre-trial conference and continued the matter to July 14, 2010, for a probable cause hearing setting. This was set as a non-appearance for Mr. Zavala.

110.   Five years had now passed since the trial court denied as moot Mr. Zavala's petition for habeas corpus with the promise to move the case to trial as expeditiously as possible.

111.   On July 14, 2010, Mr. Zavala's presence was waived. Upon stipulation of counsel, the court continued the probable cause hearing setting to August 31, 2010, with a video appearance for Mr. Zavala. According to the court's handwritten notes, the updated evaluations were completed. The minute order states: "Time is waived."

112.   On August 31, 2010, Mr. Zavala appeared by video from Coalinga State Hospital. The court scheduled a new probable cause hearing based on the new evaluations for November 30 and December 1, 2010. Upon stipulation of counsel, the court continued the probable cause hearing setting to October 12, 2010, with a video appearance by Mr. Zavala. The minute order states: "Time is waived."

113.   On October 12, 2010, a different bench officer, Judge Stratton, presided at the hearing. Mr. Zavala appeared by video from Coalinga State Hospital. Upon stipulation of counsel, the probable cause hearing remained set for November 30 and December 1, 2010.

114.   On November 10, 2010, Mr. Zavala wrote directly to the court to complain that his probable cause hearing was scheduled to commence in three weeks and he had been unable to connect with his counsel, Joe Magallanes, to find out what was going to happen at the hearing because he wanted a "full probable cause hearing." Mr. Zavala also advised the court that for over eight years, the public

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

defender's office had been "negligent" in defending him. Attached to the November 10 letter was a copy of a letter dated September 28, 2010, from Mr. Zavala to his counsel. The letter listed several legal issues that Mr. Zavala wanted to, but had not yet had an opportunity to, discuss with counsel.

115.   On November 30, 2010 a different bench officer, Judge Shabo, presided at the hearing. Mr. Zavala appeared by video from Coalinga State Hospital. Upon stipulation of counsel, the court continued the probable cause hearing to January 23, 2011, as a probable cause hearing setting. The minute order states: "Time is waived."

116.   On January 25, 2011, Mr. Zavala appeared by video from Coalinga State Hospital. Upon stipulation of counsel, the court continued the probable cause hearing setting to March 18, 2011.

117.   On February 15, 2011, the court ordered Mr. Zavala to submit to interviews for the purpose of preparing updated evaluations pursuant to *Welf. & Ins. Code*, § 6603(c).

118.   On March 18, 2011, Mr. Zavala appeared by video from Coalinga State Hospital. A different judge, Judge Argento, presided at the hearing. The probable cause hearing setting was continued to June 2, 2011.

119.   By April 2011, the petition had been on file for nine years. Mr. Zavala had been involuntarily detained the entire nine years. Six years had now passed since the trial court denied as moot Mr. Zavala's petition for habeas corpus with the promise from the Public Defender's Office to move the case to trial as expeditiously as possible.

120.   On June 2, 2011, a different bench officer, Judge Vazquez, presided at the hearing. Mr. Zavala appeared by video from Coalinga State Hospital. Upon stipulation of counsel, the court continued the probable cause hearing setting to September 1, 2011 and the court scheduled the probable cause hearing for November 16 and 17, 2011.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

121.   At the hearing on June 2, Mr. Zavala personally addressed the court: Your honor, I would like to note on the record my complaint against this time-consuming process. It is just that I have been here almost nine years and we are still doing the same thing we were doing nine years ago. So, I wanted it noted on the record.

122.   On September 1, 2011, a different bench officer, Judge Mandel, presided at the hearing. Mr. Zavala appeared by video from Coalinga State Hospital. Upon stipulation of counsel, the court continued the probable cause hearing setting to October 4, 2011 and confirmed the probable cause hearing dates of November 16 and 17, 2011.

123.   On October 4, 2011, Mr. Zavala appeared by video from Coalinga State Hospital. Upon stipulation of counsel, the court vacated the November probable cause hearing dates and continued the matter for a probable cause hearing setting on January 19, 2012. According to the court's handwritten notes, the issue of whether a 45-day extension for good cause to permit the late filing of an initial petition was pending before the California Supreme Court in *People v. Sharkey* and *People v. Lucas*. The parties were awaiting the decisions.

124.   On January 19, 2012, Mr. Zavala's presence was waived. Upon stipulation of counsel, the court continued the probable cause hearing setting to April 24, 2012, and scheduled the probable cause hearing for September 20, 21, and 28. According to the court's handwritten notes, the *Sharkey/Lucas* issue was raised.

125.   On April 24, 2012, Mr. Zavala appeared by video from Coalinga State Hospital. By stipulation, the court set a status conference for July 24, 2012. The September probable cause hearing dates remained on calendar. The court's handwritten notes reflect that one of the doctors may no longer be on the state evaluation panel.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

126.   Seven years had passed since the court denied as moot Mr. Zavala's petition for habeas corpus with the promise to move the case to trial as expeditiously as possible.

127.   On May 14, 2012, the court ordered Mr. Zavala to submit to interviews for the purpose of preparing updated evaluations pursuant to *Welf. & Ins. Code*, § 6603(c).

128.   On July 24, 2012, Mr. Zavala's presence was waived. Upon stipulation of counsel, the court continued the status conference to August 30, 2012. The September probable cause hearing dates remained on calendar. The court's handwritten notes reflect that the updated evaluations were split with respect to whether Mr. Zavala qualified as a sexually violent predator. In addition, the court was advised that the prosecutor assigned to the case since March, 2006, Greg Martin, was leaving the SVP unit of his office.

129.   On August 30, 2012, Mr. Zavala's presence was waived. Upon stipulation of counsel, the court continued the status conference to September 6, 2012, as a non-appearance for Mr. Zavala. The September probable cause hearing dates remained on calendar.

130.   On September 6, 2012, Mr. Zavala's presence was waived. Mr. Zavala's counsel moved to continue the probable cause hearing. The court granted the motion. Upon stipulation of counsel, the court continued the status conference to January 9, 2013. The court scheduled the probable cause hearing for April 19, 26 and May 3, 2013.

131.   On January 9, 2013, Mr. Zavala appeared by video from Coalinga State Hospital. By stipulation, the status conference was continued to February 21, 2013. The April/May probable cause hearing dates remained on calendar. The court's handwritten notes reflect that updated evaluations had been received and no defense motions were contemplated.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

132.   On February 21, 2013, Mr. Zavala's presence was waived. Upon stipulation of counsel, the court continued the status conference to March 29, 2013, set as a non-appearance for Mr. Zavala. The April/May probable cause hearing dates remained on calendar.

133.   On March 29, 2013, Mr. Zavala's presence was waived. Upon stipulation of counsel, the court vacated the probable cause hearing dates and reset the probable cause hearing for May 3, 8, and 9, 2013. The court also continued the status conference to April 16, 2013, set as a non-appearance for Mr. Zavala.

134.   On April 10, 2013, Mr. Zavala's presence was waived. The court vacated the April 16, status conference and reset it for April 23, 2013. The new probable cause hearing dates remained on calendar.

135.   On April 23, 2013, Mr. Zavala's presence was waived. Upon stipulation of counsel, the court vacated the May probable cause hearing dates and continued the matter for a probable cause hearing setting on July 12, 2013. The Department of State Hospitals was to appoint new evaluators pursuant to *Welf. & Inst. Code*, § 6603(c). The court's handwritten notes indicated that the evaluators were split and new evaluators were needed.

136.   Eight years had now passed since the court denied as moot Mr. Zavala's petition for habeas corpus with the promise that the case would move to trial as expeditiously as possible.

137.   On May 8 and May 23, 2013, the court ordered Mr. Zavala to submit to an interview for the purpose of preparing replacement evaluations pursuant to *Welf. & Inst Code*, § 6603(c).

138.   On July 12, 2013, Mr. Zavala appeared by video from Coalinga State Hospital. Upon stipulation of counsel, the court continued the probable cause hearing setting to August 23, 2013. The court's handwritten notes indicate the new evaluators conducted their interviews one week ago and the reports were not in yet.

29

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

139.   On August 28, 2013, Mr. Zavala appeared by video from Coalinga State Hospital. Upon stipulation of counsel, the court continued the probable cause hearing setting to October 9, 2013. The court's handwritten notes indicate that Mr. Zavala just received the updated evaluations and there was another split of opinion as to whether Mr. Zavala qualified under the statute. The notes mention a "*Reilly* issue."

140.   On October 9, 2013, Mr. Zavala appeared by video from Coalinga State Hospital. On petitioner's motion, the court continued the probable cause hearing setting to December 4, 2013. The prosecutor was to file a *Reilly* motion with opposition due November 22, 2013 and reply due December 2, 2013. The court's handwritten notes indicate that the *Reilly* motion would be filed within one week and would be heard on December 4, 2013 with the probable cause hearing to trail as soon as possible.

141.   On December 4, 2013, Mr. Zavala appeared by video from Coalinga State Hospital. The motion, which had not been filed, was to be filed by January 17, 2014, with opposition due by January 27, 2014. There was no transcript on file from the 2004 probable cause hearing. The hearing on the *Reilly* motion was re-set for January 30, 2014.

142.   On January 30, 2014, Mr. Zavala's presence was waived. The hearing on the *Reilly* issue was continued to February 18, 2014.

143.   On February 18, 2014, the District Attorney's Office filed a motion to reconsider court's granting of *Ronje* motion pursuant to the holding in *Reilly v. Superior Court* (2013) 57 Cal.4th 641. That same day upon stipulation of counsel, the court continued the motion hearing and pretrial conference to March 11, 2014. Opposition was to be filed per the code. Mr. Zavala's presence was waived.

144.   On March 11, 2014, Mr. Zavala's presence was waived. Mr. Zavala's counsel filed no opposition to the motion District Attorney's Office for reconsideration. The court granted the motion to reconsider the grant of the *Ronje*

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1   motion. On Mr. Zavala's motion, the court continued the pre-trial conference to May

2   13, 2014. The court's handwritten notes indicate that the court was advised that Mr.

3   Zavala's counsel, Joe Magallanes, was being reassigned.

4       145.   The month of April 2014, marked nine years since the court had denied

5   as moot Mr. Zavala's petition for habeas corpus with a promise to move the case to

6   trial as expeditiously as possible.

7       146.   On May 13, 2014, a different bench officer, Judge Stratton, presided at

8   the hearing. Mr. Zavala appeared by video from Coalinga State Hospital. Upon

9   stipulation of counsel, the court continued the pre-trial conference to July 21, 2014.

10   New counsel from the public defender's office, Steve McManus, appeared on behalf

11   of Mr. Zavala.

12       147.   On July 21, 2014, Judge Mandel presided at the hearing. Mr. Zavala

13   appeared by video from Coalinga State Hospital. On petitioner's motion, the court

14   continued the pre-trial conference to August 14, 2014. The court's handwritten notes

15   indicate that the assigned prosecutor was not in court because of a death in the family.

16       148.   On August 14, 2014, Mr. Zavala appeared by video from Coalinga State

17   Hospital. On Mr. Zavala's motion, the pre-trial conference was continued to October

18   32, 2014. The court's handwritten notes indicate that updated evaluations were now

19   needed.

20       149.   On October 14, 2014, Mr. Zavala appeared by video from Coalinga State

21   Hospital. On Mr. Zavala's motion, the pre-trial conference was continued to

22   December 8, 2014. The court's handwritten notes indicate that a new public defender

23   appeared on Mr. Zavala's behalf and that the prosecutor had ordered new updates.

24       150.   On December 8, 2014, a different bench officer, Judge Bianco, presided

25   at the hearing. Mr. Zavala appeared by video from Coalinga State Hospital. The court

26   set a status conference on January 30, 2015 and set jury trial for March 9, 2015. The

27

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1    court's handwritten notes indicate that the District Attorney's Office stated they

2    needed additional records, defense evaluations, and possible depositions.

3        151.   At the December 8, 2014 hearing, Mr. Zavala personally objected to

4    further continuances.

5        152.   On January 30, 2015, Mr. Zavala appeared by video from Coalinga State

6    Hospital. Upon stipulation of counsel, the court continued the status conference to

7    March 2, 2015. The reporter's transcript reflects that Mr. Zavala's counsel had a

8    planned vacation for the weeks of March 9 and March 16, and the prosecutor had

9    back-to-back trials until June. A new evaluator's report was due in late February.

10       153.   At the January 30, 2015, hearing, Mr. Zavala's counsel, after advising

11   the court of his proposed vacation plans, advised the court as follows: "I have spoken

12   with Mr. Zavala since that time. Mr. Zavala wants his trial as soon as possible. I

13   believe that he's had a long history of different attorneys and different paralegals on

14   this case, and he is anxious to have a resolution and I believe he said that he is not

15   willing to waive any additional time. Is that correct, Mr. Zavala?" Mr. Zavala

16   answered, "Correct."

17       154.   The court then discussed available trial dates with counsel and

18   determined that June 1 was the first date available for both counsel. When asked if he

19   objected to a continuance to June 1, Mr. Zavala said he did:

20       "Yes, your honor, if I may, your honor 10 years ago I filed a writ on

21       January 17th of 2005, demanded trial or the dismissal of the petition, your

22       honor. That was 10 years ago, and we are still - we are still in square one

23       in this, this whole issue. And from all that experience, I know that if we

24       just keep doing this, it's not going to stop, your honor. So, I am personally,

25       you know, ready to invoke the *Litman* motion in this case. Mr. McManus

26       disagrees with me on this, and I respect his position, but I am arguing for

27       myself here.  If we just keep doing this, your honor, we will be here --- I

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1
2
3
4
5
6

> will be here another year, two, three, four, five I don't know, you know, and it has to stop somewhere.  I understand that the system is what it is, your honor; but evidently, it's not working for me. You know, the People haven't been ready in 10 years at least. They haven't had the witnesses or the positive evaluations or whatever the case may be, but you know, I just cannot sit and wait anymore in this whole issue."

7
8

155.   The court continued the trial to June 1, 2015, over Mr. Zavala's objection. The court said the date is "set in stone."

9
10
11
12

156.   On March 2, 2015, Mr. Zavala appeared by video from Coalinga State Hospital. The new evaluator, Dr. Patterson, had not submitted his new report. The jury trial date of June 1,2015, remained on calendar. The court set a status conference for March 30, 2015.

13
14
15

157.   On March 30, 2015, Mr. Zavala appeared by video from Coalinga State Hospital. Dr. Patterson's report was still outstanding. The trial date of June 1, 2015, remained on calendar. The court continued the status conference to April 23, 2015.

16
17

158.   On March 30, 2015, Mr. Zavala asked for and received permission to address the court, and he stated:

18
19
20
21
22
23
24
25
26
27

> As the court knows, my original complaint in this whole matter was the time, the time issue. We're still just waiting and postponing and waiting. I'm still opposed to it. You know, somehow there needs to be the urgency that we need to bring this matter to a conclusion, your honor. I'm just sitting here just waiting and waiting and it's been the story of my life the last 12 and a half years already, you know. I don't understand why, you know, a report -- this report was ordered back in December, if l remember correctly, and we're in March 30 and we're still waiting for this report. I would like to object to the whole issue of just still postponing and waiting for this report, your honor.

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

159.   The court noted that Mr. Zavala had objected to further continuances back in December 2014, and stated its intention to issue an order to show cause if Dr. Patterson did not complete his report by April 10, 2015.

160.   On April 21, 2015, the District Attorney's Office filed a motion to vacate orders for defense update evaluations. On April 23, 2015, Mr. Zavala filed a response to the motion.

161.   On April 23, 2015, Mr. Zavala appeared by video from Coalinga State Hospital. The court denied the motion District Attorney's Office to vacate the orders for defense update evaluations. Dr. Patterson's report was received. Both sides announced ready to proceed to trial. The trial date of June 1, 2015, remained on calendar. The court set a status conference for May 4, 2015, and ordered that Mr. Zavala be transported to Los Angeles for trial.

162.   Ten years had now passed since the court denied as moot Mr. Zavala's petition for habeas corpus with the promise that it would move the case to trial as expeditiously as possible.

163.   On May 4, 2015, Mr. Zavala appeared by video from Coalinga State Hospital. Mr. Zavala's counsel advised the court that his expert reports would not be ready until mid-May. The District Attorney's Office requested a continuance, which was not opposed by Mr. Zavala's counsel. The request to continue was denied. The court advised Mr. Zavala's counsel to tell his experts to have their reports completed by May 5, 2015, or else the court would issue an OSC. The court continued the pre-trial conference to May 19, 2015.

164.   On May 19, 2015, Mr. Zavala appeared by video from Coalinga State Hospital.  Mr. Zavala's counsel provided the District Attorney's Office with copies of the defense expert reports. Upon stipulation of counsel, the court continued the pre-trial conference to May 26, 2015. The trial date of June 1, 2015 remained on calendar. The court ordered the sheriff to transport Mr. Zavala from the state hospital

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1    to the Los Angeles County Jail forthwith and to court for the May 26, 2015, pre-trial

2    conference.

3        165.   On May 26, 2015, Mr. Zavala was not present as the sheriff failed to

4    transport him. The court's handwritten notes indicate that the public defender declared

5    a conflict based on "very recent realization, not previously recognized during 13

6    years of representation." The court continued the matter to May 28, 2015 for further

7    proceedings on the conflict issue and ordered the sheriff to transport Mr. Zavala to

8    court.

9        166.   On May 28, 2015, Mr. Zavala was present in court. The court vacated

10   the June 1, 2015, trial date and continued the matter for further proceedings,

11   including the issue of the public defender conflict, to June 1, 2015. The sheriff was

12   ordered to transport Mr. Zavala to court for the June 1, 2015, appearance.

13       167.   On May 28, 2015, the court signed a payment voucher authorizing Mark

14   Brandt to be paid for work on Mr. Zavala's petition.

15       168.   On June 1, 2015, Mr. Zavala was present in court. In court, the public

16   defender declared a conflict and the court relieved the public defender as counsel for

17   Mr. Zavala, ordering that discovery be turned over to new counsel within two weeks.

18   The court formally appointed Mark Brandt as new counsel. The sheriff was ordered

19   to transport Mr. Zavala back to Coalinga State Hospital forthwith. The court set a

20   status of transportation conference on June 9, 2015 and a pre-trial conference on July

21   15, 2015.

22       169.   On June 9, 2015, the court confirmed that Mr. Zavala was back at

23   Coalinga State Hospital.

24       170.   The next hearing was on August 10, 2015. Mr. Zavala appeared by video

25   from Coalinga State Hospital. Upon stipulation of counsel, the court continued the

26   pre-trial conference to October 15, 2015. The court's handwritten notes indicate that

27   Mr. Zavala's new counsel estimated 200-300 hours of preparation prior to trial and

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  that by the next pre-trial conference he thought he could suggest a realistic new trial
2  date.

3      171.   On October 15, 2015, Mr. Zavala appeared by video from Coalinga State
4  Hospital. Upon stipulation of counsel, the pre-trial conference was continued to
5  December 16, 2015.

6      172.   On December 16, 2015, Mr. Zavala appeared by video from Coalinga
7  State Hospital. Upon stipulation of counsel, the court continued the pre-trial
8  conference to January 21, 2016. The court also set trial for April 4, 2016. The court's
9  handwritten notes indicate that Mr. Zavala's counsel stated he intended to file a
10 *Litmon* motion. On January 13, 2016, upon the request of Mr. Zavala's attorney, the
11 court ordered transcription of all court reporter notes for all court dates since the
12 petition was filed in 2002.

13     173.   On January 21, 2016, a different bench officer, Commissioner
14 Hymowitz, presided at the hearing. Mr. Zavala appeared by video from Coalinga
15 State Hospital. Upon stipulation of counsel, the court continued the pre-trial
16 conference to March 3, 2016.

17     174.   On February I, 2016, Judge Bianco presided at the hearing. Upon the
18 request District Attorney's Office, the court ordered that an expedited updated
19 evaluation by Dr. Patterson be provided to both counsel no later than March 3, 2016.

20     175.   On February 5, 2016, Mr. Zavala appeared by telephone. Upon
21 stipulation of counsel, the court advanced and vacated the March 3, 2016, pre-trial
22 conference and set a status conference on March 17, 2016. The April 4, 2016, trial
23 date was vacated and reset for May 17, 2016.

24     176.   On March 17, 2016, Mr. Zavala appeared by video from Coalinga State
25 Hospital. Upon stipulation of counsel, the status conference was continued to May 3,
26 2016. The court also approved setting the *Litmon* motion on May 3, 2016 with
27 opposition and reply to be filed per code. The trial date of May 17, 2016 remained on

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

calendar. The court's handwritten notes indicate that the District Attorney's Office advised the court that they intended to file a CCP 170.6 challenge to the current bench officer, Judge Bianco, at the May 3, 2016 hearing, Judge Bianco was the bench officer pushing the case to trial pursuant to Mr. Zavala's personal requests for an immediate trial date.

177.   On April 4, 2016, the District Attorney's Office filed a peremptory challenge to Judge Bianco. That same day Mr. Zavala filed a request that the District Attorney's Office's challenge be stricken.

178.   On April 5, 2016, the District Attorney's Office filed a response to Mr. Zavala's opposition to the 170.6 challenge.

179.   On April 7, 2016, Mr. Zavala filed a motion to dismiss petition based upon denial of respondent's constitutional right to due process and a speedy trial after a 13-year delay.

180.   On April 11, 2016, in chambers, Judge Bianco accepted challenge District Attorney's Office as timely and the matter was reassigned to Judge Stratton for all further proceedings.

181.   On May 16, and 18, the court heard argument on Mr. Zavala's motion to dismiss and took the matter under submission.

182.   As of May 18, 2016, 11 years had passed since April 15, 2005, when the court denied as moot Mr. Zavala's petition for habeas corpus with the promise to move the case to trial as expeditiously as possible. Mr. Zavala had been involuntarily detained for over 13 years since the filing of the petition on November 1, 2002.

////

////

////

////

////

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## V.

## FIRST CLAIM FOR RELIEF

**DELIBERATE INDIFFERENCE CAUSING VIOLATION OF PROCEDURAL DUE PROCESS, AS TO DEFENDANTS RONALD BROWN, KELLY EMLING, MARK RIDLEY-THOMAS, DOES 1 THROUGH 10**

183.   Plaintiff Gaspar Zavala repeats and realleges each and every allegation above as though fully set forth herein.

184.   This action is brought pursuant to 42 U.S.C. §1983 for violation of Mr. Zavala's rights under Fourteenth Amendment.

185.   Plaintiff is informed and believes, and thereon alleges, that The Law Offices of the Los Angeles County Public Defender, its SVP Unit, deputy public defenders, Ronald Brown, Kelly Emling, Mark Ridley-Thomas and DOES 1 through 10 failed to timely bring Mr. Zavala's case to trial as well as a large group of cases involving petitions seeking the indeterminate commitment of persons.  By thus abandoning the present plaintiff and the other similarly situated persons in their charge, said defendants allowed the present plaintiff, and other similarly situated persons, to be held as pre-trial detainees for such inordinately long periods of time that their due process rights and their rights to a speedy trial were violated.  Plaintiff, for example, spent 13 years waiting for his case to come to trial before his case was dismissed for due process violations.  Other similarly situated persons remain in custody and have spent up to 20 years waiting for the Public Defender's Office to bring their cases to trial.

186.   On or before Mr. Zavala's underlying case/petition was dismissed, defendant the Public Defender's Office, its SVP Unit, and the deputy public defenders working in that unit, failed to exercise reasonable diligence carrying out their duties to their SVP clients and failed to carry out their professional

38

responsibilities such that Mr. Zavala and other similarly situated persons were made to unnecessarily spend years as pre-trial detainees waiting for their cases to be brought to trial.

187.    These massive delays in the bringing to trial of the SVP cases were the result of the following misconduct and professional failures by The Public Defender's Office, its SVP Unit, and the deputy public defenders working in that unit:

a.    Failing to regularly bring their clients to court for hearings, or to otherwise ensure that their clients are in court or that they would appear by video conference, so as to conceal from their clients their delays in processing their cases in a timely manner;

b.    Failing to communicate to their clients the status of their cases, the strategies which were to be employed in defending their case, and the likelihood of success of their efforts;

c.    Failing to obtain consent to continue hearing dates, trials dates as well as other deadlines which were in their control;

d.    Waiving of their clients' appearance at hearings without securing their clients' authority to do so;

e.    Agreeing to repeated continuances sought by the prosecution;

f.     Ignoring their clients' requests to bring their case to trial promptly;

g.    Failing to meet reasonable deadlines in their clients' cases;

h.    Failing to timely secure experts, to ensure that such experts are properly prepared, and to ensure that such experts complete their work in a timely fashion;

i.    Allowing experts' reports to lapse or otherwise go stale;

j.    Concealing material facts from their clients;

k.    Concealing their misconduct from their clients;

l.    Failing to inform their clients of conflicts of interests;

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

m.   Failing to inform the court of conflicts of interest;

n.   Failing to bring cases to trial within the stipulated time period with the District Attorney's Office after the passage of Proposition 83;

o.   Failing to file oppositions to motions and other petitions by the prosecution;

p.   Allowing SVP cases to sit idle for years without meaningful progress;

q.   Failing to recommend to their supervisors that a declaration of unavailability be declared;

r.   Failing to recommend to their supervisors that a conflict of interest be declared so as to permit their SVP clients to file *Litmon* motions after extensive delays in the processing of their cases,

s.   After extensive delays on their part, failing to inform their clients of their right to file a motion under *People v. Litmon* for the violation of their constitutional rights.

188.   Defendants Ronald Brown, Kelly Emling, and DOES 1 through 5 were aware of the inordinate and excessive delay that plaintiff and the other SVP detainees were experiencing in the processing of their cases and that said cases were not being brought to trial in a timely basis. Said defendants were aware of the customs and practices described above that existed at the SVP Unit and which were the causes of the failure to bring these cases to trial in a timely fashion.

189.   Between 2006 and 2016, defendants Ronald Brown, Kelly Emling, and DOES 1 through 5 learned of these delays and of the causes of SVP cases not coming to trial in a timely basis through their regular monitoring of the SVP Unit and the monitoring of the performance of the lawyers in that unit.  Said monitoring by defendants Ronald Brown, Kelly Emling, and DOES 1 through 5 consisted of:

a.   Monthly meetings with the supervisors of the SVP Unit,

b.   Monthly meetings with the staff of the SVP Unit,

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

c.   Annual performance evaluations of the supervisors and staff of the SVP Unit,

d.   Annual analysis of each individual SVP case, the SVP Unit case load, the SVP Unit projections for staff needs and the expert needs conducted during the preparation of the SVP Unit budget for presentation to the Los Angeles County Board of Supervisors.

e.   Direct participation in the litigation of SVP cases, such as approving requests for expert evaluations, participating in decisions to appeal trial-court rulings, the preparation and/or review of appellate briefs regarding such decisions, and the monitoring of the outcome of such appeals (see e.g., *Arnold v. Superior Court*, (2014) unpublished opinion involving SVP defendant who was challenging an SVP mental health examination and noting critically that "… defendant was evaluated by the hospital's department in 2007. But as of September 2013, his case had not been tried.")

190.   Defendant Mark Ridley-Thomas and DOES 6 through 10 learned of the above-mentioned dramatic trial delays in the SVP cases and of the causes of SVP cases not coming to trial in a timely basis through their regular monitoring of the Public Defender's Office and through their monthly meetings with defendants Ronald Brown and Kelly Emling.

191.   Defendant Ridley-Thomas was the member of the Los Angeles County Board of Supervisors who was responsible for monitoring the performance of the Public Defender's Office and for Public Defender's budget.  He regularly met with defendants Brown and Emling to discuss the issues surrounding the performance of the Public Defender's Office.   As early as 2008, Brown and Emling discussed the significant delays in the processing of pending SVP cases with Ridley-Thomas.  They informed him of the significant backlog of work in the SVP Unit, the need for more

41

1    funding, the great delays that were occurring in the bringing of these cases to trial.

2    As early as 2008, they informed defendant Ridley Thomas of the names of the

3    various persons, including Mr. Zavala, who were awaiting trial in their SVP case and

4    informed Mark Ridley-Thomas of the number of years each SVP client had been

5    waiting for trial.

6         192.   Besides discussing the long delays in bringing the SVP cases to trial,

7    Brown and Emling regularly wrote defendant Mark Ridley-Thomas emails,

8    memoranda, meeting summaries and other written documents discussing the delay in

9    processing these cases.   At least once annually, during the budget discussions

10   between Brown, Emling, Ridley-Thomas and DOES 1 through 10 from 2008 to 2015,

11   these defendants discussed the SVP Unit's significant backlog of cases which had not

12   reached trial in five years, ten years and, eventually, 20 years.   Annually, and often

13   times quarterly, these defendants discussed with respect to the SVP trial delays:

14        a.   Whether the delay in bringing these cases to trial violated the due

15             process rights and speedy trial rights of the detainees, including Mr.

16             Zavala,

17        b.   The costs of bringing these cases to trial;

18        c.   Civil liability for failing to bring these cases to trial,

19        d.   The reasons for the delays in bringing the cases to trial,

20        e.   The delays occasioned by the lapsing of the expert reports,

21        f.   The poor performance of the SVP Unit lawyers,

22        g.   The repeated requests for continuances by the SVP lawyers and

23             prosecutors,

24        h.   Implementing new procedures and policies to ensure that the SVP cases

25             got to trial in a timely fashion, and,

26        i.   Assigning a specific judicial officer or courtroom for SVP cases.

27

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

193.   During every year between 2006 and 2015, defendant Brown, Emling and/or DOES 1 through 5, were aware of the great failures of the SVP unit in getting a large number of SVP cases to trial in a timely fashion, including Mr. Zavala's case. On a monthly basis during that time, said defendants learned of continuances of trial dates and other related dates which continued to extend the time in which the SVP cases would come to trial.  Notwithstanding this information, said defendants failed to:

    a.    Implement policies and procedures to advance or otherwise expedite the bringing of the SVP cases to trial,

    b.    Prioritize resources to the oldest SVP cases to ensure they would get to trial in an expedited fashion,

    c.    Discipline deputy public defenders who repeatedly failed to bring old SVP cases to trial,

    d.    Institute tighter controls over supervisors in the SVP Unit to ensure that they managed their subordinates in a fashion that ensured that the older SVP cases would get to trial promptly,

    e.    Impose time limits for the bringing of SVP cases to trial,

    f.    Declare conflicts or declare "unavailability" in old SVP cases so as to ensure that the courts could appoint private counsel or counsel from the alternate public defender's office to bring SVP cases to trial, and,

    g.    Declare conflicts or declare "unavailability" in those older SVP cases that were subject to a *Litmon* motion so as to permit the court to appoint private counsel to represent those detainees who had valid grounds to bring such motions.

194.   Despite knowing of the great magnitude of the delays in bring hundreds of SVP cases to trial, defendants Brown, Emling and DOES 1 through 5 failed to take any reasonable measures to ensure that the constitutional rights of the SVP detainees,

1   including Mr. Zavala, were protected.  Such failure constituted deliberate indifference

2   to the due process rights and the speedy trial rights of Mr. Zavala and other similarly

3   situated SVP detainees.

4        195.   Defendants Brown, Emling and DOES 1 through 5 knowingly refused to

5   terminate the acts, customs, practices and misconduct of their subordinates, which

6   they knew was causing and would cause constitutional injury upon the SVP detainees

7   in their charge. Said defendants failed to take reasonable measures to institute new

8   policies, practices, procedures and customs to address the long delays in getting SVP

9   cases to trial, they failed to institute new training of their subordinates in the

10  management of SVP cases so as to ensure that SVP cases got to trial in a timely

11  fashion, and they failed to discipline their subordinates for failing to get the SVP

12  cases to trial in a timely fashion.  All of these failures on the part of defendants

13  Brown, Emling and DOES 1 through 5 constituted an acquiescence in the

14  constitutional deprivations that resulted or constituted a reckless and callous

15  indifference to the rights of SVP detainees, including Mr. Zavala and other similarly

16  situated SVP detainees.

17       196.   Every year between 2008 and 2015, defendants Brown, Emling, Ridley-

18  Thomas and DOES 1 through 10, through the aforementioned monitoring of the SVP

19  Unit, were made aware of the extended delays in the SVP cases and of the resulting

20  due process violations that the SVP detainees were suffering.

21       197.   Mark Ridley-Thomas and DOES 6 through 10, received in-person and

22  written reports from defendants Brown and Emling and DOES 1 through 10 as to the

23  great delays in bringing the SVP cases to trial.  Defendants Mark Ridley-Thomas and

24  DOES 6 through 10 were responsible for the institution of policies and procedures to

25  correct this unconstitutional condition, but failed to do so. Such failure constituted

26  deliberate indifference to the due process rights and the speedy trial rights of Mr.

27  Zavala and other similarly situated SVP detainees.

28

44

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

198.   Defendants Mark Ridley-Thomas and DOES 6 through 10 knowingly refused to terminate the customs, practices and misconduct of their subordinates, which they knew were causing and would continue to cause constitutional injury upon the SVP detainees, including Mr. Zavala.

199.   Defendants Mark Ridley-Thomas and DOES 6 through 10 failed to take reasonable measures to institute new policies, practices, procedures and customs to address the long delays in getting SVP cases to trial, they failed to institute new training of their subordinates in the management of SVP cases so as to ensure that SVP cases got to trial in a timely fashion, and they failed to discipline their subordinates, including Ronal Brown and Kelly Emling, for failing to get the SVP cases to trial in a timely fashion.  All of these failures on the part of defendants Mark Ridley-Thomas and DOES 6 through 10 constituted an acquiescence in the constitutional deprivations that resulted or constituted a reckless and callous indifference to the rights of SVP detainees, including Mr. Zavala and other similarly situated SVP detainees.

200.   As a result of the above deliberate acts and omissions of defendants Brown, Emling, Ridley-Thomas and DOES 1 through 10, Plaintiff was damaged and injured as alleged above by being made to endure a wrongful 13-year pre-trial detention which the Los Angeles County Superior Court found to have violated Mr. Zavala's civil rights.

201.   The conduct of defendants Ronald Brown, Kelly Emling, Mark Ridley-Thomas and DOES 1 through 10, as alleged above, was done with deliberate indifference to the constitutional violations endured by the present plaintiff.  As such, punitive damages should be imposed, in an amount sufficient to punish said defendants and to deter future similar conduct by said defendants and others in similar positions.

**VI.**

45

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## SECOND CLAIM FOR RELIEF

**MUNICIPAL LIABILITY FOR VIOLATION OF CONSTITUTIONAL RIGHTS AS TO DEFENDANTS COUNTY OF LOS ANGELES AND LAW OFFICES OF THE LOS ANGELES COUNTY PUBLIC DEFENDER**

202.   PLAINTIFF repeats and realleges each and every allegation above as though fully set forth herein.

203.   This action is brought pursuant to 42 U.S.C. §1983 for violation of Plaintiff's rights under the Fourteenth Amendment.

204.   Plaintiff's due process rights were violated by the 13-year delay in bringing his case to trial as determined by the Los Angeles Superior Court and as alleged above in the first claim for relief.  As a result of the aforementioned acts and omissions of defendants Brown, Emling, Ridley-Thomas and DOES 1 through 10, plaintiff's Fourteenth Amendment due process rights were violated.

205.   At the time of these constitutional violations by said defendants, defendant County of Los Angeles and defendant Public Defender's Office had in place, and had ratified customs and practices which permitted and encouraged attorneys in the Public Defender's Office to delay bringing SVP cases to trial and which violated the due process right of their SVP clients, including Mr. Zavala.

206.   These practices, customs, policies and procedures included:

a.   Failing to regularly bring their clients to court for hearings, or to otherwise ensure that their clients are in court or that they would appear by video conference, so as to conceal from their clients their delays in processing their cases in a timely manner;

b.   Failing to communicate to their clients the status of their cases, the strategies which were to be employed in defending their case, and the likelihood of success of their efforts;

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

c. Failing to obtain consent to continue hearing dates, trials dates as well as other deadlines which were in their control;

d. Waiving of their clients' appearance at hearings without securing their clients' authority to do so;

e. Agreeing to repeated continuances sought by the prosecution;

f. Ignoring their clients' requests to bring their case to trial promptly;

g. Failing to meet reasonable deadlines in their clients' cases;

h. Failing to timely secure experts, to ensure that such experts are properly prepared, and to ensure that such experts complete their work in a timely fashion;

i. Allowing experts' reports to lapse or otherwise go stale;

j. Concealing material facts from their clients;

k. Concealing their misconduct from their clients;

l. Failing to inform their clients of conflicts of interests;

m. Failing to inform the court of conflicts of interest;

n. Failing to bring cases to trial within the stipulated time proposed by the District Attorney's Office after the passage of Proposition 83;

o. Failing to file oppositions to motions and other petitions by the prosecution;

p. Allowing SVP cases to sit idle for years without meaningful progress;

q. Failing to recommend to their supervisors that a declaration of unavailability be declared;

r. Failing to recommend to their supervisors that a conflict of interest be declared so as to permit their SVP clients to file *Litmon* motions after extensive delays in the processing of their cases,

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

s.   After extensive delays on their part, failing to inform their clients of their right to file a motion under *People v. Litmon* for the violation of their constitutional rights.

207.   Deliberate indifference to the civil rights of SVP detainees such as Mr. Zavala was evidenced by said defendants' ignoring the long delays in the bringing of SVP cases to trial and the long pre-trial detentions suffered by SVP clients.

208.   Further deliberate indifference by these defendants was evidenced by the following acts and omissions:

a.   Failing to implement policies and procedures to advance or otherwise expedite the bringing of the SVP cases to trial,

b.   Failing to prioritize resources to the oldest SVP cases to ensure they would get to trial in an expedited fashion,

c.   Failing to discipline deputy public defenders who repeatedly failed to bring old SVP cases to trial,

d.   Failing to institute tighter controls over supervisors in the SVP Unit to ensure that they managed their subordinates in a fashion that ensured that the older SVP cases would get to trial promptly,

e.   Failing to impose time limits for the bringing of SVP cases to trial,

f.   Failing to declare conflicts or to declare "unavailability" in old SVP cases so as to ensure that the courts could appoint private counsel or counsel from the alternate public defender's office to bring SVP cases to trial, and,

g.   Failing to declare conflicts or declare "unavailability" in those older SVP cases that were subject to a *Litmon* motion so as to permit the court to appoint private counsel to represent those detainees who had valid grounds to bring such motions.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

209.   The foregoing acts, omissions, and systemic deficiencies are and were customs, practices, policies and procedures of defendant County of Los Angeles and of defendant Public Defender's Office and by ratifying such, these defendants permitted and encouraged attorneys in the Public Defender's Office to delay in bringing SVP cases to trial in a timely fashion.  This caused, permitted and/or allowed under official sanction the attorneys of the Public Defender's Office to believe that the long delays in bringing SVP cases to trial would not be objectively, thoroughly and/or meaningfully investigated and that no negative consequences would befall them, all with the foreseeable result that said attorneys would greatly delay in bringing SVP cases to trial and thereby violate the civil rights of the SVP detainees in their charge.

210.   As a direct and proximate result of the aforementioned acts alleged herein, Mr. Zavala was detained for 13 years in violation of his due process rights as alleged in the first claim for relief which caused him serious and permanent injuries and have physically, psychologically, and emotionally impaired him permanently.

211.   As a result of the above customs, practices, policies and procedures of defendant County of Los Angeles and of defendant Public Defender's Office, Mr. Zavala was damaged and injured as alleged above by being made to endure a wrongful 13-year pre-trial detention.

## PRAYER

Wherefore, plaintiff Gaspar Zavala demands the following relief, against all the defendants with respect each of the claims for relief above:

a.   Compensatory general and special damages in an amount in accordance with proof;

b.   Exemplary damages, against defendants Ronald Brown, Kelly Emling, Mark Ridley-Thomas, and DOES 1 through 10 in an amount sufficient to deter and to make an example of these defendants;

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1   c. Reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C.

2    §1988;

3   d. Costs of suit necessarily incurred herein; and,

4   e. Such further relief as the Court deems just or proper.

5

6 Dated: May 22, 2018     CASILLAS & ASSOCIATES

7          By:  _/s/  Arnoldo Casillas_

8          ARNOLDO CASILLAS
           Attorneys for Plaintiff

9          GASPAR ZAVALA

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1

## DEMAND FOR JURY TRIAL

2      COMES NOW Plaintiff Gaspar Zavala and respectfully demands that the

3  present matter be set for a jury trial.

4

5

6  Dated: May 22, 2018                    CASILLAS & ASSOCIATES

7                                         By: _/s/_ _Arnoldo Casillas_
8                                         ARNOLDO CASILLAS
                                          Attorneys for Plaintiff
9                                         GASPAR ZAVALA

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**